## ROCKINGHAM,

### JULY TERM, A. D. 1854.

---

### FRENCH v. HATCH, APPT.

28   331
66   433
66   572

A testator made the following bequest: " Having implicit confidence in my beloved wife, S. G., I do hereby will and bequeath to her all the property, both real and personal, that I am possessed of, during her life, except my farm in Wendell; no part of the bank stock is to be disposed of unless her comfort should require it, but it is to be apportioned to my relations, according to her discretion, to be enjoyed by them after her decease." S. G. was executrix of the will, and returned an inventory, amounting to $23,582,14 The bank stock exceeded the sum of 10,000. She pledged a part of the bank stock as security for $1,000, which she borrowed and gave her note for, and the stock was sold to pay the note. .The money thus borrowed she lent, and it was never repaid. She also borrowed sundry sums of money, to secure which she pledged the stock, which was sold to pay the debts. It appeared that her husband was a hospitable man, but lived within his income, but it did not appear that her comfort required her to expend any more money than he expended, although it appeared that she had incurred sundry debts. *Held*, that she was bound to make a judicious and reasonable use of the income of the property.

That she was not authorized to sell the bank stock, for the purpose of lending the proceeds.

Nor was she authorized to sell the stock to supply her necessities, if they arose from her extravagance or improvidence.

But if she had managed the property with prudence, and the rest of the property had been exhausted notwithstanding, and her comfort required it, she would be authorized to sell the stock.

That she had a right to expend sufficient money to enable her to live in the same style in which her husband lived, provided she did not encroach on the bank stock.

That she was entitled to the use only, during her life, of the cash on hand at the time of the testator's death; and her estate should be charged with the cash, but not with the interest upon it.

French *v.* Hatch.

A bequest of personal property to a legatee for life does not vest the absolute ownership thereof in the legatee.

Where a bequest of personal property is made to a legatee for life only, the estate of the legatee, after her death, is chargeable with the property.

APPEAL from a decree of the judge of probate for the county of Rockingham, made July 12, 1848, accepting the report of the commissioner of insolvency upon the estate of Sarah Gardner, wherein the said commissioner had allowed to Henry F. French, administrator of William Gardner, the sum of $8,889,01, " bal.' of property in the hands of S. Gardner, Ex. of Wm. Gardner," from which decree, Albert R. Hatch, administrator of Sarah Gardner, on the 8th day of August, A. D. 1848, claimed an appeal to the court of common pleas, to be holden at Portsmouth, in and for said county, on the third Tuesday of September, A. D. 1848.

The case was committed to an auditor, who made a report, stating the following facts.

Henry F. French, administrator as aforesaid, on the 29th day of August, 1848, filed in the probate court for said county, a declaration in assumpsit against Albert R. Hatch, administrator as aforesaid, containing three counts.

The first count alleged that Sarah Gardner, on the 9th day of August, A. D. 1841, being indebted to French as administrator as aforesaid, in the sum of $10,000, for so much money by her before that time had and received to the use of French as administrator, being the balance of property in her hands, received from the estate of William Gardner, deceased, in consideration thereof then and there promised to pay him that sum.

The second count alleged that the said Sarah, on the 9th day of August, 1841, was indebted to French, administrator, in the sum of $10,000, for so much money by her before that time had and received to the use of the estate of William Gardner, deceased, being the balance of property in her hands received from the estate of William Gardner, deceased; that on the 10th day of August, 1841, she died;

that thereafterwards, on the 1st day of January, 1843, French was appointed administrator, and afterwards, on the 1st day of January, 1844, Hatch was appointed administrator as aforesaid, and thereby as such administrator became indebted to French as administrator, and in consideration thereof, then and there promised to pay him that sum.

The third count alleged that the estate of the said Sarah, on the first day of January, 1844, being indebted to the estate of William Gardner in the sum of $10,000, for so much money by her, in her life time, to wit, on the 9th day of August, 1841, had and received to the use of the estate of William Gardner, being the balance of property in her hands, received from the estate of William Gardner, deceased, in consideration thereof Hatch, administrator, promised to pay French, administrator, that sum on demand.

The plea is the general issue.

French proved before the auditor the following facts in support of his declaration.

William Gardner died testate, April 10, 1834. In his will is the following bequest: " Having implicit confidence in my beloved wife Sarah Gardner, I do hereby will and bequeath to her, the said Sarah Gardner, all the property, both real and personal, that I am possessed of, during her life, except my farm in Wendell; no part of the bank stock is to be disposed of unless her comfort should require it, but it is to be apportioned to my relations, according to her discretion, to be enjoyed by them after her decease."

By the will, his nephew, Andrew Gardner, who had the care of his farm in Portsmouth, was to account to her for one half of every thing raised on said farm, agreeably to the customary mode of tenants.

She was appointed sole executrix of the will, and accepted the trust, and the inventory of William Gardner, taken by her, shows the following estate.

---

French *v.* Hatch.

---

### REAL ESTATE.

The mansion-house in Portsmouth,... $4,000,00
Dwelling-house and land in Water St.    800,00
The farm in Portsmouth,............ 5,000,00
The farm in Wendell,.............    650,00
                          $10,450,00

### PERSONAL ESTATE.

Household furniture, chaise, &c.,......$518,44
Stock and farming tools on farm in Ports-
   mouth,............................ 370,70
Stock on farm in Wendell,........... 145,00
Pew No. 38, in St. John's Church,.....    60,00
                    1,094,14
18 shares in N. H. Union Bank, at
   $206 per share,................. 3,708,00
20 shares in Rockingham Bank, at $50
   per share,..................... 1,000,00
Stock in Sate Bank in Boston,....... 6,000,00
3 shares in Piscataqua Bridge,.......    105,00
                   10,813,00
     Cash on hand,......................   1,225,00

     Total amount of inventory,........... 23,582,14

Sarah Gardner, in July, 1841, sold all the shares in the State Bank at Boston, and received therefor, July 17, 1841, $5,685.

She borrowed of Mark Walker $1,000, on September 10, 1839, and gave her note therefor, and pledged six shares in the N. H. Union Bank to Walker, as security for the payment of the note, which shares were sold to pay it. The money which she received of Walker was lent by her, on the same day, to D. D. Wendell, who gave her his note therefor, with the name of D. D. & A. Q. Wendell, as surety, which last mentioned note has never been paid. D. D.

Wendell is a son of Sukey Wendell, one of the heirs at law of William Gardner.

She borrowed of the N. H. Union Bank $200, September 15, 1838, and on September 16, 1838, $60 more, and on February 6, 1839, $100 more, and gave her notes therefor; and for the security of those notes pledged two shares in said bank, which shares were disposed of to pay the notes.

French was appointed administrator *de bonis non*, with the will annexed of William Gardner, November 8, 1842, and caused to be taken an inventory of such personal property, belonging to his estate, as came into his hands, amounting to $2,868,12.

French, administrator, claims to recover in this suit of Hatch, administrator, the money which Sarah Gardner received from the sale of the shares in the State Bank and from shares in the N. H. Union Bank, mortgaged or pledged by her as before mentioned, with interest thereon, on the ground that she had no authority or right to sell or dispose of the bank stock and for the cash on hand.

Hatch proved before the auditor the following facts in defence of the action.

Sarah Gardner died testate August 10, 1841. By her will, she apportioned, among the relations of William Gardner, so much of the bank stock as remained undisposed of, and appointed James W. Emery executor thereof, who accepted the trust, but afterwards resigned, and Hatch was appointed administrator *de bonis non*, with the will annexed of Sarah Gardner, on September 12, 1843. Hatch, administrator, upon the citation of French, presented to the probate court, for settlement, the account of Sarah Gardner, as executrix of William Gardner, wherein he charged her with the whole amount of personal property, according to the inventory which she had returned, and credited her with the same property, as given to her by the will of William Gardner. French appeared at the probate court, and moved that the eight shares in the N. H. Union Bank, pledged

by her as aforesaid, amounting to $1,600, and the stock in the State Bank at Boston, amounting to $6,000, sold by her, and the cash on hand $1,225, be deducted from the credit side of the account, on the ground that the personal estate was given to her only during her life, and she had no right to sell or dispose of the same; and thereupon the judge of probate ordered and decreed that the eight shares in the N. H. Union Bank, $1,600, and the stock in the State Bank, 6,000, and the cash on hand, $1,225, amounting to $8,825, be deducted from the credit side of the account, whereby, upon the settlement of her account as executrix, a balance was found in her hands, as executrix of William Gardner, of $8,801. Hatch appealed from the decree of the judge of probate to the superior court of judicature, and represented the estate of the said Sarah insolvent, and a commissioner of insolvency was appointed thereon. French presented to the commissioner a claim for the balance of $8,801, so decreed by the judge, and the only evidence offered by him in support of the claim before the commissioner was a copy of the decree of the judge of probate. The commissioner allowed the claim and interest, amounting to $8,889,01, and the judge of probate accepted the report of the commissioner allowing the claim, from which decree Hatch took this appeal. The superior court, December term, 1847, reversed the decree of the judge of probate, so far as related to the deduction of the bank stock and cash on hand from the credit side of her account; and upon a re-settlement of her account as executrix, according to the decision of the superior court, a balance was found due to her, as executrix of William Gardner, of $24.

It was further proved, on the part of the defence, that William Gardner was a gentleman of the highest respectability, and associated with the first families of Portsmouth; that he lived in good style, in a large house, to which was attached a large garden, was very hospitable and entertained a good deal of company, was liberal in his contributions

to benevolent and charitable objects, and was generous towards his poorer relations; that he kept a horse and carriage, and a man servant and two maid servants constantly, and other occasional help, and his style and manner of living was equal to that of the first families of Portsmouth; that Sarah Gardner, after the death of Mr. Gardner, lived in the mansion-house, and kept up pretty much the same style and manner of living that he had done; she kept a horse and carriage for several years after his death, and a man servant and two maid servants constantly, and other occasional help; that she was very hospitable and entertained a good deal of company, and the families which were accustomed to visit at the house before Mr. Gardner's death, continued their visits there afterwards in the same manner as before, and his relations were there a good deal after his death, in the same manner as before; that the regular members of the family consisted of herself, her two sisters, Susan and Nancy Purcell, Maria Gardner and Miss Clark, being the same persons who composed Mr. Gardner's family, and the servants; that Mrs. Gardner, before and after her husband's death, was of feeble health and an invalid a great part of the time, and unable to superintend her domestic affairs, and her sister, Susan Purcell, had the superintendence and management of the domestic affairs in the house for two or three years before Mr. Gardner's death, and all the time afterwards until Mrs. Gardner's death; that Mrs. Gardner attended meeting at St. John's church, when able, and paid a minister tax and other contributions at that church, and was benevolent and charitable to the poor, and generally her style, manner and expense of living was very similar to that maintained by Mr. Gardner in his lifetime; that the taxes upon the property taxed to the heirs of William Gardner, and paid by Mrs. Gardner, were upon an average about $90 per year, and the taxes to Mrs. Gardner were about $16 per year; that other families in Portsmouth, who lived in no better style than Mrs. Gardner, expended

at least from $1,200 to $1,500 per year in support of their families; that the house was shingled and thoroughly painted by Mrs. Gardner, and the fences and wharf were repaired by her to some extent.

That Mrs. Gardner did not receive the full income to which she was entitled from the farm in Portsmouth, as Andrew Gardner, who had the possession thereof, did not deliver to her one half of all the produce raised on the farm, as he was required to do by the will of Mr. Gardner, but to what extent he fell short it did not appear; that the N. H. Union Bank suspended the paying of dividends for several years prior to 1842, and the market value of the stock was $175 per share, though it paid about par. when the business of the bank was closed; that the Rockingham Bank suspended the paying of dividends for some years, and other years paid a dividend of four per cent. per annum.

That Mrs. Gardner consulted counsel as to her right to sell the bank stock, and was advised that she would have a right to sell it if her necessities required it—if it was necessary, in order to enable her to live in the same style in which Mr. Gardner used to live, and she stated at the time she was making arrangements for the sale, that she was indebted, and it was necessary to sell the bank stock to raise money to pay her debts; but it did not appear to what amount or for what purpose the debts were incurred, except a debt to John Hanatt for about $426, for groceries, and a debt to Mark H. Wentworth for between $500 and $600 for dry goods, being a store account of two years standing, which two debts were paid by her a short time before her death. That the following is all the property, left by her, which came into the possession of her administrator.

A note against Samuel Gardner, dated February 18, 1838, for $258,14, and interest, on which was paid and indorsed, February 18, 1839, $15,48.

A note against Peyton R. Gardner, dated July 26, 1836, for $100 and interest.

French *v.* Hatch.

A note against Colby for about $50, which three notes were paid to the said Hatch, as her administrator.

A note against D. D. Wendell and others, dated September 10, 1839, for $1,000, and interest, no part of which has ever been paid or can be collected.

A claim against Andrew Gardner, for arrearages of rent of the farm in Portsmouth, no part of which has ever been paid.

It also appeared in evidence that Mrs. Gardner and her sisters, Susan and Nancy Purcell, owned in common a house in Broad Street, in Portsmouth, which was appraised by the selectmen of Portsmouth, for the purpose of assessing taxes, at $2,500 and that Mr. Gardner lived within his income.

In the opinion of the court, all the facts essential for a final decision had not been found, and at the September term, 1852, of the court of common pleas, the cause came on for trial, upon the pleadings as they appear as above stated. The plaintiff contended that if Sarah Gardner had a right to sell any of the bank stock, she was nevertheless bound to leave the principal untouched, and that he was absolutely entitled to recover the cash inventoried, and the sums for which the stock was sold, whatever might have been her necessities. On the other hand, the defendant denied his liability for the "cash," inasmuch as it had been spent by Sarah Gardner, or for the avails of the bank stock, inasmuch as she had, without fraud, judged the sales necessary for her "comfort," and he also contended that if the sales were unauthorized, still, the plaintiff should have sued for the stock, instead of the proceeds. The plaintiff put in evidence the auditor's report, and other proof relating to the property of Sarah Gardner. The defendant did not offer any evidence, but moved for a nonsuit, on the ground that it did not appear that the cause of action was the same as that presented to the commissioner, but the motion was denied.

The court instructed the jury that the defendant was liable for the cash, $1,225, and for the proceeds of the bank stock, which was sold to obtain money to lend to Wendell. The court also instructed the jury that the plaintiff was entitled to recover the sums for which the other bank stock was sold, except so far as they should believe that the sales were necessary for the comfort of Sarah Gardner, and the burden of proof to show the necessity, rested upon the defendant, and that she was bound to make use of all other means which could reasonably be made available to meet her wants, whether derived from the income and rents of other portions of the property bequeathed her, or from her own independent estate, before resorting to a sale of the bank stock ; that in deciding what was necessary for her " comfort," they should take into consideration the style in which her husband had lived, and in which she and her acquaintances had been accustomed to live, and that if her debts and necessities had arisen from her extravagance or improvidence, she still had a right to dispose of the stock to such an amount as her " comfort " at that time required, of which the jury were to judge, and to say what were her wants, and what her available means of supplying them, when the sales were made.

The defendant asked the court to charge the jury as a matter of law, that Sarah Gardner had a right to live in the same style after her husband's death as he had lived in, but the court declined to so charge the jury.

By the consent of parties the jury were directed to find the amount due at the death of Sarah Gardner, upon which interest is to be computed, according to the opinion of the court.

The jury returned a verdict for $4,714, which both parties moved to set aside, because of the ruling and instructions given and refused, so far as the same were adverse to them respectively.

French v. Hatch.

*Hatch*, for the appellant.

The declaration contains three counts.

The first alleges that Sarah Gardner, on the 9th of August, 1841, promised, &c., to Mr. French, administrator of the estate of William Gardner. It does not allege that Mrs. Gardner was then alive, or that Mr. French was then administrator.

The second count alleges that Sarah Gardner, August 9, 1841, being indebted to Mr. French as administrator, died August 10, 1841, that Mr. French was appointed administrator of William Gardner's estate January 1, 1843, and that Mr. Hatch was appointed administrator of Sarah Gardner's estate January 1, 1844, and so became indebted and promised to pay to Mr. French as administrator.

The third count alleges that the estate of Sarah Gardner, January 1, 1844, being indebted to the estate of William Gardner, for money had and received by Sarah Gardner in her lifetime, to wit, August 9, 1841, in consideration thereof, the said Hatch, as administrator, promised to pay to the said French, administrator.

The facts, as shown by the plaintiff, and stated in the case and in the auditor's report, which is made part of it, are, that William Gardner died April 10, 1834; that Sarah Gardner became his executrix, and died August 10, 1841; that Mr. French became administrator, *de bonis non*, of the estate of William Gardner, November 8, 1842; and Mr. Hatch became administrator, *de bonis non*, of Sarah Gardner's estate, September 12, 1843. No evidence of any express promise by Mrs. Gardner or Mr. Hatch was offered.

Now the first count is unsupported by any evidence competent to sustain it. Mrs. Gardner could have made no express promise to the plaintiff as administrator, for he did not become such until she was dead. And the law cannot imply a promise, where no express promise could by human possibility have existed. Chitty on Contracts, 16; Green. Ev. §§ 47, 48.

The declaration is in assumpsit, and alleges a contract. To every contract there must be two parties, one who promises, and one who accepts the promise. Chitty on Con. 8.

Mrs. Gardner did not and could not promise to herself. She did not and could not promise to a person not in existence while she lived; and if she could make such a promise, there was no person to accept it.

The second count is repugnant and impossible, upon the face of it. Mrs. Gardner, who died August 10, 1841, is alleged to have been, August 9, 1841, indebted to Mr. French, as administrator, though he was not appointed to his trust till January 1, 1843; and in consideration of this impossible indebtedness, Mr. Hatch, as administrator, promised, in 1844. So far as this and the third count allege promises of Mr. Hatch, they depart from the foundation of the appeal, which was on a claim against Mrs. Gardner, existing as a debt at her decease, and presented to the commissioners of insolvency on her estate, as such. A new promise by the administrator was never made, would have been without consideration, and if binding on him, immaterial to the present action.

The third count alleges that "the estate" of Sarah Gardner was indebted to "the estate" of William Gardner, and founds thereon a promise by Mr. Hatch as her administrator to pay. If any such promise could be shown or implied, it would be a personal promise of Hatch, without consideration, and not cognizable in this action. An "estate" is not a person, and cannot be indebted, and so the declaration alleges no consideration for the promise.

And the counts of the declaration are misjoined. The first alleges a promise of Mrs. Gardner, the other two, promises by the administrator. Chitty's Pl. 205, 206. This is an appeal from a commissioner of insolvency, and no claims can properly be inserted in the declaration but such as are against the deceased directly. If an action would lie

French v. Hatch.

against the administrator, on his promise, it is not this action, and cannot be joined with it.

But the exceptions to the declaration and evidence disclose the fact that there is no foundation for the action in any form. Mrs. Gardner had, by the will of her husband, a life estate in the chattels bequeathed to her. They consisted of cash and of several specific articles, part of which she, by his will, was entitled to convert into cash, "if her comfort" required.

The donation of a life estate in the money and in the articles which she might convert and did convert into money, gave her an absolute estate in the money. It is an article which is consumed in the use. 4 Burns' Eccl. Law 142; 2 Ventr. 349; 1 Vesey 33; *Robinson* v. *Fitzherbert*, 2 Bro. C. C. 127; Love. on Wills 252; *White* v. *White*, 1 Iredell, ch. 441. A testator bequeathed money to his wife, whom he made executrix, for life, then to her children. She invested it in slaves. Held that the children took no interest in the slaves. If it be said Mrs. Gardner was bound to invest the money, the same must be true of all chattels, for all property is capable of investment, and money cannot be beneficially invested without consuming it and converting it from a chattel to a chose in action.

A bequest of personal property to one for life, without limitation over, gives an absolute disposal to the legatee. *Brownfield's Est.* 8 Watts 465; *State* v. *Warrington*, 4 Harrington (Del.) 55.

The true rule, applicable to all chattels given for life is, that so much of the identical chattel as exists or can be traced, after the decease of the holder for life, belongs to the remainder man; but if it has been consumed, the remainder man is without remedy. The case of *Weeks* v. *Weeks*, 5 N. H. Rep. 327, leads to this. The remarks of the chief justice as to the liability of the estate of the holder for life are mere *obiter dicta*, and not supported by authority or principle. 1 Story Eq. § 604, p. 562.

If Mrs. Gardner sold when her comfort did not require it, or for any unauthorized purpose, the sale was void, and the remedy of the plaintiff is to seek for the shares in the hands of the person who holds them. *Marston* v. *Carter*, 12 N. H. Rep. 163, 164.

If Mrs. Gardner might not expend the money that came into her hands originally or from the sale of the stock, she did right to invest it. And if the investment, honestly made, proved unfortunate, she is not chargeable. The note of D. D. & A. Q. Wendell may be the property of the plaintiff; but the jury were improperly charged that the defendant, as administrator, was liable for the money given for the note.

The clause in William Gardner's will which gives his wife authority to sell his bank stock, if her comfort should require, implies an authority to expend the proceeds, and makes her sole judge of what her comfort required. And neither she nor her administrator are bound to show what her comfort required, nor is that burden of proof on the defendant, as charged by the court to the jury. The word "comfort" is indefinite, and is to be measured only by the feelings or *wants* of Mrs. Gardner. These are not susceptible of proof.

This is not, substantially, the same claim that was presented to the commissioner of insolvency. That was a claim against Mrs. Gardner as executrix. See Auditor's Rep. p. 412.

If any thing can be recovered by the plaintiff in this suit, interest must be allowed from the decase of Mrs. Gardner to the date of the report only. Comp. Stat. ch. 171, § 8, p. 1.

*French*, for the appellee.

Sarah Gardner, although by implication authorized to sell the bank stock, if her comfort required it, had but the use of the avails, and must account for the principal. *Weeks* v. *Weeks*, 5 N. H. Rep. 329. She is, therefore, liable for the

avails of the bank stock and the cash not accounted for in her administration account, amounting to $8,801.

It was decided by this court, at the July term, 1851, that the appellant was liable as her administrator for what Mrs. Gardner had lent, and that she must use her own means first.

GILCHRIST, C. J. French is administrator *de bonis non*, with the will annexed, of William Gardner, and Hatch is administrator *de bonis non*, with the will annexed, of Sarah Gardner.

William Gardner died on the 10th of April, 1834. He made his wife, Sarah Gardner, executrix of his will, and by it made the following bequest:

" Having implicit confidence in my beloved wife, Sarah Gardner, I do hereby will and bequeath to her all the property, both real and personal, that I am possessed of, during her life, except my farm in Wendell; no part of the bank stock is to be disposed of, unless her comfort should require it, but it is to be apportioned to my relations, according to her discretion, to be enjoyed by them after her decease."

By the will, the testator's nephew, Andrew, who had' the care of his farm in Portsmouth, was to account to Sarah for one half of every thing raised on the farm, agreeably to the customary mode of tenants.

The inventory of the estate, as returned by her, was as follows:

| | | |
|---|---|---:|
| Real estate,............................... | | $10,450,00 |
| Personal estate, exclusive of stocks,............ | | 1,094,14. |
| Stocks, Union Bank,................ | $3,708,00 | |
| " Rockingham Bank,.......... | 1,000,00 | |
| " State Bank,................. | 6,000,00. | |
| " Piscataqua Bridge,.......... | 105,00 | |
| | | 10,813,00 |
| Cash,........................ | | 1,225 00 |
| | | 23,582,14 |

On the 17th of July, 1841, she sold the shares in the State Bank, and received therefor $5,685.

On the 10th of September, 1839, she borrowed of Mark Walker $1,000, for which she gave her note, secured by a pledge of the Union bank stock, which was sold to pay the note. She lent the money to D. D. Wendell, who gave his note therefor, signed also by A. Q. Wendell, which has never been paid. She also borrowed sundry sums of the Union Bank, giving her note, and pledging two shares in the bank, which were sold to pay the note.

French was appointed administrator *de bonis non*, with the will annexed, of William Gardner, on the 8th of November, 1842. The inventory of the personal property amounted to $2,868,12.

French seeks to recover the money which Mrs. Gardner received from the sale of the shares in the State and Union Banks, on the ground that she had no right to dispose of them, and also the cash on hand.

French presented his claim to the commissioner on Mrs. Gardner's estate, and was allowed the sum of $8,889,01, balance of property in her hands, as executrix of William Gardner, and from the decree accepting the report, Hatch appealed on the 8th of August, 1848.

The first count in French's declaration was for money had and received by Mrs. Gardner, on the 9th of August, 1841, from the estate of William Gardner, to his use as administrator.

The second count alleges the receipt of the money as aforesaid, that on the 10th of August, 1841, she died; that French was appointed administrator on the 1st of January, 1843; that Hatch was appointed administrator on the 1st of January, 1844, and in that capacity became indebted to French as administrator.

The third count alleged that the estate of Mrs. Gardner, on the 1st of January, 1844, being indebted to the estate of William Gardner, in the sum of $10,000, for money had

and received by her in her life time to the use of the estate of W. Gardner, Hatch, as administrator, promised to pay, &c.

For the defence, it was shown that Mrs. Gardner died testate, on the 10th of August, 1841. By her will, she apportioned among the relations of W. Gardner so much of the bank stock as remained undisposed of. Hatch, in his account, charged her with personal property included in her inventory, and credited her with the same property as given her by the will of W. Gardner. French moved that the Union and State Bank stocks and the cash on hand be deducted from the credit, on the ground that the personal estate was given her only during her life, and she had no right to dispose of it, and the judge ordered that the deduction be made, thus leaving a balance in her hands of $8,801. From the decree Hatch appealed, represented her estate as insolvent, and a commissioner was appointed. French presented to the commissioner a claim for this balance of $8,801, and the only evidence offered by him was a copy of the decree. The commissioner allowed it, and the judge of probate accepted his report, from which decree Hatch took this appeal. At the December term, 1847, the superior court reversed the decree, so far as related to the deduction of the bank stock, and the cash from the credit side of her account, and upon a re-settlement of her account, according to the decision of the superior court, a balance was found in her favor of $24.

It was also shown that W. Gardner was a hospitable man, liberal in his contributions and generous to his poor relations, that he kept a horse and carriage, a man and two maid servants, that he lived in a large house with a large garden, that after his death Mrs. Gardner lived in the house, and kept up the same establishment that he had done, and was hospitable and entertained considerable company; that her family consisted of herself and four ladies, as in W. Gardner's lifetime; that she was an invalid, and unable to look after her

domestic affairs, which was done for some years by her sister, Susan Purcell. She paid a minister's tax, and other contributions at St. John's Church. · Her taxes on the property were about $90 a year. Other families in Portsmouth, who lived in no better style than she did, expended from $1,200 to $1,500 a year in support of their families. She shingled and painted the house, and made some repairs on the fences and wharf.

Mrs. Gardner did not receive all the income from the farm to which she was entitled, as the testator's nephew did not deliver her one half of the produce, as the will required, but how much he fell short did not appear.

The Union Bank suspended the payment of dividends for some years prior to 1842, though the stock was about par when the business of the bank was closed. The Rockingham bank suspended paying dividends for some years, and in other years paid a dividend of four per cent.

Mrs. Gardner was advised by counsel that she might sell the bank stock, if her necessities required it—if it was necessary in order to enable her to live in the same style in which Mr. Gardner lived. About the time of the sale she said it was necessary to sell the stock to pay her debts, but no debts were shown except one of $526 for groceries, and one of $600, for a store account of two years' standing, which she paid before her death. Mrs. Gardner left sundry notes, which ·came into the possession of her administrator, including one for $1,000 against D. D. Wendell, which cannot be collected. There was, also, a claim against Andrew Gardner, for arrears of rent for the farm.

Mrs. Gardner and her sisters owned a house in Portsmouth, appraised at $2,500.

It also appeared that W. Gardner lived within his income.

At the July term, 1851, it was held that Mrs. Gardner's estate should be charged with the money lent by her and with the arrears of the income of the Portsmouth farm, as no

French v. Hatch.

reason was shown why they might not have been recovered, but as there were not facts enough to enable the court to judge in relation to the income, a further inquiry was directed.

The case was tried upon the pleadings as they appear, and the plaintiff contended that if Mrs. Gardner had a right to sell any of the bank stock, she was bound to leave the principal untouched, and he was entitled to recover the cash on hand and the proceeds of the stock, whatever might have been her necessities. The defendant denied his liability for the cash, as she had spent it, or for the avails of the bank stock, as she had, without fraud, judged the sales necessary for her " comfort." He also alleged that the suit should have been for the stock instead of the proceeds.

The court held that the defendant was liable for the cash on hand and for the proceeds of the stock, which was sold to obtain money to lend to Wendell. Also that the plaintiff was entitled to recover the sums for which the other stock was sold, except so far as the jury should believe the sales necessary for her comfort, the burden of proving which was on the defendant, and that she was bound to make use of all other means which could reasonably be made available, before resorting to a sale of the bank stock; that in deciding what was necessary for her " comfort," they should consider the style in which her husband had lived, and in which she and her acquaintances had been accustomed to live, and that if her debts and necessities had arisen from her extravagance or improvidence, she still had a right to dispose of the stock to such an amount as her " comfort," at that time, required, of which the jury were to judge.

The court declined to instruct the jury that she had a right to live in the same style, after her husband's death, that he had lived in.

The main question in this case is, what power over the bank stock was given by the will to Mrs. Gardner?

The provision made her by the will was most liberal.

She has all the testator's property, during her life, except his farm in Wendell, estimated to be worth $650, leaving about $23,000, of which she had the use. The only restriction, and that is not upon the use but upon the disposition, is that no part of the bank stock is to be "disposed of unless her comfort should require it." So slight a limitation as this cannot be a cause of complaint, for, excepting the farm in Wendell, she had all the income the testator enjoyed. He lived within his income, and admitting that we are not to expect from her the financial skill of a man of business, as her husband probably was, she had sufficient income to procure every thing necessary for her comfort, using the word in the most liberal sense. Her cash income, besides the house and all the conveniences of living, was about $1,100, and it deserves serious inquiry whether, with the most ordinary prudence, her "comfort," with a reasonable construction of the word, required her to dispose of the stock from which a large part of her income was derived.

Now the will is to have a reasonable construction, and the intent of the testator is to be carried into effect, if it may be. Her comfort did not require that the Union Bank stock should be sold, and the money lent to Wendell, which was in substance done, nor that it should be sold for the purpose of paying her debts, for it does not appear that her comfort required her to incur any debts, or that there was any need of her being indebted at all. What was done with the proceeds of the State Bank stock does not appear. There is nothing to show that her comfort required her to dispose of it.

It is very clear that Mrs. Gardner was not the unqualified owner of the property bequeathed. Where there is a devise for life, in express terms, a power of disposal annexed does not enlarge it to a fee, but where to a general devise, without any specification of the quantity of interest, an absolute power of disposal is annexed, the devisee takes a fee. This

French *v.* Hatch.

distinction is carefully marked and settled in the case of *Jackson* v. *Robins*, 16 Johns. 588, and cases cited by *Kent*, Ch.

The bequest is for life, with an express limitation upon her power of disposing of the stock, unless her comfort should require it.

The instruction to the jury that she might dispose of the stock, if her necessities arose from her extravagance or improvidence, was, we think, incorrect. Such a power is directly opposed to the object of the will, which was that this fund should not be touched unless for her comfort. It certainly could not have been the intent of the testator that she might waste all the property but the stock, and then spend that, on the ground that her comfort required it. Such would be an unreasonable view of the case, and this result could not have been in the testator's mind when he expressed the implicit confidence stated in the will. It would be tantamount to an unqualified gift to her, and this was not the case, if any effect be given to the clause relating to the stock; and we are bound to give effect to every part of the will, if that may legally be done.

There is no evidence that there was any necessity for the sale of the stock for her comfort. She appears to have sold it just as she pleased. If, by prudent management, the rest of the property had been exhausted, and her comfort required it, she might have sold the stock.

We think, also, that the court erred in declining to charge the jury that she had a right to live in the same style her husband lived in. As it appeared that he lived within his income, and as she had the same income, by the words of the will, why might she not live as he did? The same income that maintained his family would be sufficient for her, as the number was less by one. In fact, she might live as she pleased, subject only to the limitations of the will. He lived within his income, and lived in a generous and hospitable manner, and she might do the same, provided she

did not encroach on the bank stock. This his comfort did not require, and there is nothing in the case that shows that any thing more was necessary for her comfort than for his. Indeed, his mode of life is not an unfair criterion of what she would require. In the absence of evidence showing that more would be required for her comfort than for his, we may assume that if her expenses exceeded his, they were unreasonable, and that she should not sell the stock to defray them. She is chargeable with the cash on hand. This is part of the property of which she had the use only during her life. This does not belong to that description of property of which the use consists in the consumption. It is property which, in the ordinary course of business, yields an income.

But she should not be charged with any interest on the property, as the will gives her the use of it for her life.

It is argued that the bequest of the money and articles gave her an absolute estate in both. If so, it would follow that an estate for life cannot be given in chattels. But the contrary doctrine is well established. *Dow* v. *Jewell*, 1 Foster's Rep. 514. The use, unless the article be in its nature perishable, does not consist in its consumption. In the case of *Marston* v. *Carter*, 12 N. H. Rep. 159, furniture was bequeathed to the testator's daughter, during her life, and after her decease to her children, and it was held that the limitation over was valid. *Gillespie* v. *Miller*, 5 Johns. Ch. 21. In *Westcott* v. *Cady*, 5 Johns. Ch. 346, Chancellor Kent says the law is too well settled to be drawn in question at this late day, that a limitation of personal goods and chattels or money in remainder, after a bequest for life, is good.

It is said, in the argument, that the remarks of *Richardson*, C. J., in the case of *Weeks* v. *Weeks*, 5 N. H. Rep. 527, as to the liability of the estate of the holder for life are mere *obiter dicta*, and not supported by authority or principle. For this, reference is made to 1 Story's Eq. § 604, in which

French *v.* Hatch.

we find nothing on the point. It is true, that in *Weeks* v. *Weeks*, the main question was not as to the liability of the estate of the tenant for life. The question was whether a widow, who had personal estate bequeathed to her during life, was bound to furnish security for the benefit of those in remainder. The court say, "if, when she dies, she leaves any estate, it will be answerable. If she marries again and the property comes into the hands of a second husband, he will be accountable." Of course he would not be liable unless she were so; and if she were liable her estate will be so. In *Upwell* v. *Halsey*, 1 P. Wms. 651, the testator gave £10 to his sister, and directed that such part of his estate as his wife *should leave of her subsistence* should return to his sister. Upon the death of the wife who had married a second husband, the sister sued him for an account of this personal estate, and Lord *Hardwicke* said "it is now established that a personal thing or money may be devised to one for life, remainder over, and as to what has been insisted on, that the wife had the power over the capital or principal sum, that is true, provided it had been necessary for her subsistence, not otherwise; so that her marriage was not a gift in law of this trust money. Let the master see how much of this personal estate has been applied for the wife's subsistence, and for the residue of that which came to the defendant, the second husband's hands, let him account." In *Weston* v. *Cady*, 5 Johns. Ch. 334, a testator bequeathed personal property to his wife for life, with a remainder over. She died, and a bill was filed against her executors for an account of the personal estate. It was decreed that the plaintiffs were entitled, out of the assets of the widow in the hands of the defendants, to payment of the capital or principal, without interest, of the money and stock devised by the testator to his wife, for her life. The position, then, in *Weeks* v. *Weeks* seems to be well established by high authority.

*Verdict set aside.*