1821.

WESTCOTT
v.
CADY.

WESTCOTT and others *against* CADY and others.

A bill of revivor and supplement, is a compound of a supplemental bill and bill of revivor, and not only continues the suit which has abated by the death of a plaintiff, &c., but supplies any defects in the original bill arising from subsequent events, so as to entitle the plaintiff to relief on the whole merits of his case.

Where letters of administration, under the *seal* of the Court of Probates, in due form of law, are produced, this Court will deem them to be regular and valid, without looking beyond them.

A will and codicil are to be taken and construed together; as parts of one and the same instrument.

A limitation over of personal goods and chattels, or money, in remainder, after a bequest for life, is good.

Where a testator devised all the rest and residue of his estate to his brother and sister, " to them and their heirs for ever; all the children of his said brother and sister, to have an equal share in every thing he left; and if his brother died without children, the children of his sister should enjoy the whole equally :" *Held,* that the brother and sister took as tenants in common, not as joint tenants.

A legatee in remainder, after an estate for life, may call on the legatee for life for an inventory of the property devised, to be filed.

*May 4th and July 14th.*

THE bill of *revivor* and *supplement* in this cause, was filed by *John Westcott* and *Susannah* his wife, (late *S. Wood,*) and *James Westcott* and *Mary* his wife, (late *M. Wood,*) administrators of *Charles Chinn,* deceased, (the said *Susannah* and *Mary* being next of kin to *C. C.,* the intestate, and, as children of *Sarah Wood,* deceased, devisees under the will of *Edward Chinn,* deceased,) against *Daniel Cady* and *John Willard,* as executors of the last will and testament of *Margaret Chinn,* deceased. It stated that the plaintiffs filed their original bill against *Margaret C.,* widow and executor of *Edward C.,* deceased, for a discovery and account of the real and personal estate of *Edward Chinn,* and that she might come to a just account as to the personal estate; and that the same might be applied, in the

course of administration, and the plaintiffs be paid the share to which they were entitled, in right of *Susannah* and *Mary Wood*, by virtue of the will of *Edward Chinn*, deceased, &c. That *Margaret Chinn* appeared to the original bill, and answered; and that she, afterwards, on the 15th of *November*, 1820, died; and by her will, dated the 8th of *June*, 1819, made the defendants executors, and directed that such sums as were requisite to pay or extinguish the claims of the plaintiffs, should be paid out of the residue of the estate. That the plaintiffs are entitled, in virtue of the devise over in the will of *Edward C.*, deceased, and the codicil thereto, or in right of *S.* and *M.*, or as administrators of *C. C.*, deceased, or in right of *S.* and *M.*, as his next of kin, to the possession of all the personal estate of *E. C.*, deceased, except the specific portions of the real and personal estate devised and bequeathed by him. The plaintiffs *prayed*, that the defendants might either admit assets of *Margaret C.*, deceased, sufficient to satisfy the demands of the plaintiffs, or that they set forth a true account of the personal estate of *M. C.*, and its value; and that they be decreed to apply sufficient of the proceeds thereof, to satisfy the demands of the plaintiffs; and for general relief.

The *answer* of the defendants, filed *March* 10th, 1821, admitted the original bill, filed *December* 15th, 1817, as stated, and that *Margaret C.* put in an answer thereto, on the 17th of *April*, 1818; that she died *November* 15th, 1820, having made her will, by which the defendants were appointed her executors; that *M. C.* devised the residue of her estate, as stated in the bill of the plaintiffs, subject to debts, expenses, &c., and subject to the power given to the defendants, as her executors, &c., to settle with the plaintiffs, on just terms; and that she directed that all such sums as the defendants should pay, to settle or extinguish the claims of the plaintiffs, should be paid out of the residue of her estate. The defendants insisted, that the plain-

1821.

WESTCOTT
v.
CADY.

tiffs are *not entitled to any share of the personal estate of which Edward C. died possessed or entitled*, but that the whole belonged to *Margaret C.*, as devisee, legatee, widow, executrix, and creditor of *Edward C.*, deceased. They denied that they have had, or have possession of any part of the real estate of *Edward C.*, and they disclaimed all interest in, or claim thereto, but they did not admit that the plaintiffs were entitled to it. They admitted, that they had qualified as executors, and possessed themselves of the personal estate, which they believed sufficient to satisfy any just and valid demand of the plaintiffs ; but they did not admit sufficient assets, because they did not know, with certainty, the amount : That they were ready to account as executors, &c., as the Court should direct, and they submitted that the suit abated by the death of *Margaret C.*, might stand revived against them as executors.

*Margaret Chinn*, in her *answer* to the *original* bill, admitted that *Edward C.* made his will, on the 13th of *May*, 1800, and gave " to his wife, *Margaret C.*, 500 dollars, to be paid to her, yearly, during her life, from the interest of his loan office certificates; that he gave to her all the stock and farming utensils, on his farm, and all his household furniture and servants ; and devised to her his farm at *Claverack*, during her natural life ; and all the rest and residue of his estate, not otherwise devised in the will, in what place or of what kind soever it might be, he gave to his brother, *Charles C.*, and his sister, *Sarah Wood*, to them, and to their heirs forever. The *reversion* of the annuity of 500 dollars, to be paid to his wife, *Margaret C.*, during her life, and the *reversion* of the *Claverack* farm, devised to her for life, at her death, he gave to his said brother and sister in fee : all the children of his said brother and sister to have an equal share of every thing he left ; and if his brother died without children, the children of his sister should enjoy the whole between them equally.

He appointed his brother *Charles* and his sister *Sarah Wood*, *Jacob Vanderheyden*, and his wife's brother, *James Livingston*, and *Joseph Binden*, his executors. He directed that an account of his estate in *America* be sent, as soon as possible, to his said brother and sister in *England*, and that his executors send the surplus revenue of his estate, after paying his wife the said annuity of 500 dollars, and other necessary expenses, to his said brother and sister, or to their children, annually." The answer of *M. C.* further admitted, that *Edward C.* on the 4th of *August*, 1802, made a *codicil* to his will, in which he stated, " that he had, since making his will, sold his *Claverack* farm, which he had left to his wife *Margaret*, as therein stated, and that the estate, by the sale, had become *personal* property ; and it being his desire that his wife should have the *income, profit, use,* and *enjoyment* of that estate, during her life, he bequeathed to her, during her natural life, to take and enjoy the principal and interest due to him on the sale of that estate ; and he, also, gave her, during her natural life, the use, interest, and enjoyment of all the moneys he had in possession, and all the interest he has in the funds or stocks of the United States, &c. That his executors should draw for these moneys for the use of his wife, and invest her with full power to receive and manage the same, during her natural life, and to discharge his funeral expenses out thereof, and to have, enjoy and manage, to her own best advantage, for and during her natural life, all his estate, moneys, and personal property aforesaid; and he appointed her executrix." The answer further admitted, that the testator died *August* 17th, 1802, and that she (*M. C.*) administered and possessed herself of the personal estate, and the securities and deeds relative to the real estate. She admitted the death of *Sarah Wood*, in the lifetime of the testator, leaving the plaintiffs *Susannah* and *Mary*, her next of kin, and heirs at law. That *Charles C.* died on the 10th of *December*,

1821.
WESTCOTT
v.
CADY.

1802, leaving the plaintiffs, *S.* and *M.*, his next of kin and heirs at law. She denied that the plaintiffs had administered on the estate of *Charles C.*, by letters of administration taken out in this state; though such letters may have been made, yet the plaintiffs had not appeared and qualified; and, therefore, have no authority to sue as administrators. That the plaintiffs are *aliens*, and residents in *England*, and have never been in this state, and cannot administer on the personal estate of *Charles C.*, deceased. She admitted the *letter* written by her, as stated in the bill, addressed to *Charles Chinn*, and to *John* and *James W.*, plaintiffs, and that the letter inclosed such account, as charged in the bill, and which account was made by the executor *J. Vanderheyden*, without her directions. She admitted the *marriage contract* referred to in the said letter and account, and that it was the only marriage contract ever made between her and the testator. That the 3,000 pounds mentioned in that contract, consisted in the loan office certificates, which she believed were less valuable than specie. That she married the testator on the 10th of *July*, 1779, and the testator took possession of the 3,000 pounds mentioned in the marriage contract, and managed it as he thought proper. That on the 5th of *January*, 1791, the testator procured a certificate to be issued in the name of his wife, the defendant, of three per cent. stock, for 282 dollars and 87 cents; another certificate, on the 15th of *May*, 1797, for 600 dollars; and one other certificate, on the 22d of *May*, 1798, for 800 dollars; and the defendant had received the interest on those securities, amounting to 1,682 dollars and 87 cents, to her own use. That she did not recollect but that the testator may have been consulted about the management of the 3,000 pounds. She admitted, that the 196 pounds, credited in the said account, on the marriage contract, was intended as the value of the stock, the certificates of which were so issued in her name.

She denied that she ever received any other payment on the marriage contract than the said stock. She stated, that soon after the testator's death, she caused an *inventory* to be made, in order to be filed, but that she destroyed it without filing it, as she was advised that the whole personal estate belonged to her. She set forth the real estate of which the testator died seized; and alleged that the plaintiffs are all aliens, and not entitled to any part of the real estate, as heirs of *Charles C.*, or of *Sarah Wood.* That besides furniture, the testator owned, at the time of his death, 26,181 dollars and 76 cents in three per cent. stock, &c. (setting forth specifically the assets.) That after paying funeral expenses and rent, she had used and managed the residue of the personal estate to her own best advantage; and she denied any right of the plaintiff to those moneys: she insisted that if the testator did devise any *reversionary* interest therein after his death, which she denied, it was to *Charles C.* and *Sarah W.*, and that as *Sarah W.* died *before* the testator, *Charles C.* took the whole as *survivor*, and that the devise over to the children of *Sarah W.*, in case *Charles C.* should die without children, was void; and the plaintiffs had no interest therein, as next of kin to *Sarah W.* or to *Charles C.* That no person can make title but as executor or administrator of *Charles C.* That the plaintiffs never applied to her, before filing their bill. That the bill did not pretend that *Charles C.* died intestate, and that, therefore, she could not pay over to the plaintiffs, without indemnity: But she insisted that by the will and codicil, she was entitled to the whole of the personal estate of the testator.

The *letter* referred to in the original bill, and admitted in the answer of *Margaret C.*, which was exhibited, was dated *October* 16th, 1802, and directed to *Charles C.* and *John* and *James Westcott.* In that letter, she mentioned that she had sent a copy of the will and an account current; and she stated a marriage contract, wherein her husband

1821.

WESTCOTT
v.
CADY.

gave, by deed, to *Leonard Gansevoort*, 3,000 pounds, in trust for her use, with interest thereon; that she had received only 196 pounds thereof, and offered to relinquish to them the lands and the stock in the funds, on being paid the above sum specified in the marriage contract.

The *account current*, also exhibited, contained the same admissions of assets as were made in the answer. The plaintiffs, also, exhibited *letters of administration*, granted to them, by the Judge of Probates of *New-York*, on the 17th of *December*, 1817, on the goods, chattels, credits, &c. of *Charles C.*, deceased.

*May* 4th, 1821. The cause was this day brought to a hearing, on the bill and answers, and exhibits referred to in the pleadings: and was argued by *M. Van Buren* and *W. A. Duer*, for the plaintiffs, and by *Henry* and *D. Cady*, for the defendants.

*The plaintiffs'* counsel waived all claim to the lands or real estate of the testator, and contended, 1. That by the will and codicil of *Edward C.*, his wife, *Margaret C.* became entitled to the income of his estate, *during her life only*, subject to account to those entitled to the reversion. (1 *Vesey*, 187. 1 *Vesey, jun.* 407. 1 *P. Wms.* 425. 2 *Vesey*, 626. *Ambl.* 30. 1 *Co.* 157. 174. *Digges's Case*, 2 *Co.* 33. 3 *Bro. C. C.* 543. 5 *Vesey*, 248. *Powell on Devises*, 248. 265. 3 *Leo.* 71. 1 *Salk.* 240. 10 *Vesey*, 370.)

2. That the residue and reversion were devised over to *Charles C.* and *Sarah W.*, the brother and sister of the testator, and that this disposition was good by way of executory devise. (*Fearne on Ex. Dev.* 4 *ed. by Powell*, 26. 3 *Bro. Ch. Cas.* 615. 6 *Bro. P. C.* 354.)

3. That *Charles C.* having died without issue, and intestate, the plaintiffs, being the only children of his sister *Sarah*, are entitled to the personal estate, *first*, as *administrators* of *Charles C.*, under an appointment by competent authority,

unrevoked and irrevocable, in this collateral manner, or in this Court: *secondly*, under the limitation over in the will of *Edward C.*: *thirdly*, as the next of kin of *Charles C.* (*Cro. Car.* 8. *Toller's Law of Ex.* 89. *Fearne, Ex. Dev.* 4 ed. 21. 182. 281. 531. 10 *Johns. Rep.* 16. 1 *P. Wms.* 356. 3 *P. Wms.* 372. *Pollexf. Rep.* 54. 2 *Wils.* 29. *Fearne's Contin. Rem.* 364. 552. 6 ed. 3 *Johns. Cas.* 109. 4 *Johns. Rep.* 75.)

*For the defendants*, it was contended, 1. That the plaintiffs, on their bill of *revivor*, were entitled to no other relief than what they were entitled to under the *original bill ;* and that, by the will and codicil, all the personal property was given by the testator to his wife. (*Toller's Ex.* 66. 93. 250. 1 *Maddock's Ch.* 182. 2 *Fearne*, 35.)

2. The plaintiffs are not entitled to a decree against the testatrix of the defendants, but only to a *discovery* of the personal estate.

3. That the plaintiffs cannot claim the property in dispute, as *administrators* of *Charles C.*, deceased ; nor can they be regarded as such administrators, because, being *aliens*, always residing in a *foreign* country, they never could have qualified as such.

4. Although the personal estate was bequeathed to the defendants' testatrix, for and during her natural life, yet as it was not bequeathed over, she took it *absolutely*, as legatee.

5. The general residuary clause in the will, cannot operate as a bequest over of the property bequeathed to the defendants' testatrix for life, which is the main point in the cause.

6. Where the personal estate bequeathed to one for life, is of that character, that the first use must produce its destruction, or compel the legatee for life to part with it, any bequest over must be void. There is no case to be found, of a general limitation over, or where the general residuary

clause was applied to a chattel, after an express bequest of it for life. (*Shep. Touchst.* 411. note. 2 *Vern.* 59. 322. 445. 1 *P. Wms.* 503. 666. and note. 3 *Vesey,* 5. 2 *Bro. C. C.* 127. 4 *Vesey,* 716. 3 *Atk.* 486. 366. 2 *Vern.* 293. 3 *Mod.* 228. 1 *Atk.* 546. 2 *Vesey,* 653. 3 *Vesey,* 119. 2 *Vern.* 39. 59. 10 *Vesey,* 465. 1 *P. Wms.* 748. 3 *Vesey,* 311. 1 *Vesey,* 9. 1 *P. Wms.* 651.)

7. If the words, " for and during her natural life," create a limitation as to the personal estate bequeathed, so that there was a residue undisposed of, the executor and executrix of *Edward C.* would take that residue, beneficially ; or the defendants' testatrix would be entitled to one half of it, under the statute of distributions.

*July* 14*th.*

THE CHANCELLOR. The cause was brought to a hearing upon the bill of revivor and supplement, and the exhibits referred to in the pleadings.

A bill of *revivor* and *supplement* is a compound of a supplemental bill and bill of revivor, and not only continues the suit, which has abated by the death of a plaintiff, &c. but supplies any defects in the original bill, arising from subsequent events, so as to entitle the plaintiff to relief on the whole merits of the case.

1. The first question is as to the extent of the relief to which the party may be entitled, under these pleadings. The defendants contend, that the plaintiffs can have no other relief, than what they were entitled to under the the original bill, and that under that bill, they were entitled only to the exhibition of an inventory from *Margaret Chinn.* The original bill went further, and prayed not only for an account of the estate of *Edward Chinn,* dec.. but that the same might be applied in a course of administration, and the plaintiffs paid the proportion or share of the estate, to which they were entitled under the will of *E. C.* But the present bill is not only a bill of revivor, made necessary by the death of *M. C.* the original defendant, but it is a bill of revivor *and supplement,* and sets forth the new rights accruing to the plaintiffs by the death of *M. C.* ; and the defendants, by their answer submit to account, and to the revival of the suit.

A bill of revivor and supplement not only continues the

suit, upon abatement, but it supplies defects arising from some event subsequent to the institution of the suit. It is a compound of a supplemental bill and bill of revivor, and in that character, it states the original bill, and proceedings thereon, and the subsequent event; and it states also the consequent alteration or acquisition of interest, with respect to the parties. (*Red. Tr.* 33. 74.) I apprehend, that the plaintiffs can obtain, under the present pleadings, all the relief, which the facts and the merits of the case will authorize.

2. Another objection, of a technical kind, is, that the plaintiffs are aliens, and residents in *England,* and that they have not qualified themselves, according to law, to sue here as administrators. The answer to this is, that letters of administration, under the seal of the Court of Probates of this State, are produced, and I am bound to presume *omnia rite acta,* and to give full credit to the judicial acts of a competent jurisdiction. I am not to look beyond the letters of administration *sub pede sigilli.* Lord *Talbot,* in *Tourton* v. *Flower,* (3 *P. Wms.* 370.) observed, in answer to an objection to the validity of the administration, " here being an administration taken out of the Archbishop's Court, I will look upon the same to be good."

3. Having disposed of these preliminary objections, we come to the consideration of the real merits of the claim of the plaintiffs.

Their rights depend upon the construction to be given to the will and codicil of *Edward Chinn.* I shall take it for granted, as a clear and settled rule, (see, for this purpose, *Willet* v. *Sandford,* 1 *Vesey* 186.) that a will and codocil are to be taken and construed together, in connection with each other, as parts of one and the same instrument. The intent of the testator is to be gathered from the whole, and a codicil is no revocation of a will, further than it is expressed.

*margin notes:*

1821.

WESTCOTT
v.
CADY.

Where letters of administration under the seal of the Court of Probates, in due form, are produced, this Court will deem them to be regular and valid without looking beyond them.

A will and codicil are to be construed together as parts of one and the same instrument.

1821.

WESTCOTT
v.
CADY.

The will gave to the testator's wife, *M. C.*, an annuity, for life, of 500 dollars, to be received and paid to her, yearly, from his loan office certificates, and it gave to her certain specific chattels, as farming utensils, household furniture, and servants, absolutely, and it gave to her, for life, the rents and profits of a farm at *Claverack.* ALL *the rest and residue of his estate, real and personal, not otherwise devised in the will, in what place or what kind soever it might be,* and including expressly the *reversion of the annuity of 500 dollars and the reversion of the Claverack Farm,* he gave to his brother *Charles Chinn,* and his sister *Sarah Wood,* and *to them and their heirs forever.* He further declared that all the children of his said brother and sister should have an equal share of every thing he should leave, and that if his brother died without children, *the children of his sister should enjoy the whole between them equally.*

It is admitted, that the sister, *Sarah Wood,* died before the testator, and that the plaintiffs, *Susannah* and *Mary,* are her next of kin, and heirs at law, and that *Charles Chinn* died after the testator, and that the plaintiffs, *S.* and *M.* are also his next kin, and heirs at law.

Upon the will, as it thus originally stood, there could not have been a doubt, but that *C. C.* and *S. W.* and their representatives, took the remainder of the loan office certificates, after her death, and that she was only to have an annuity of 500 dollars, during life, out of the interest or dividends of that stock. The testator evidently intended by the words, *loan office certificates,* his three per cent stock, of the *United States,* and the bequest over, after that annuity ceased, was clearly good. There could have been no more difficulty upon this part of the will, as to the stock, than as to the remainder in fee of the *Claverack* farm, after the life estate therein had ended. The more colourable ground of resistance to the claim of the bill, is derived from the codicil. In that, the testator states, that since the date

of his will, he had sold the *Claverack* farm, and turned it
into personal property, and it being his desire, that his
wife should have the " income, profit, use, and enjoyment
of that estate during her life," he accordingly bequeathed
to her, " during her natural life," the principal and inte-
rest due him on the sale of that estate.   The codicil not
only, so far, substituted the use of the proceeds, instead of
the use of the farm ; but it went further, and gave
to her, " *during her natural life, the use,* interest, and en-
joyment of all the *moneys* he had in possession, and all the
interest he had in the funds or stock of the *U. S.* and
public securities ;" and the executors were directed to draw
for those moneys " *to and for the use of his wife,*" and to in-
vest her with full power to receive and manage the same,
" for and during her natural life ;" and out of these moneys,
to discharge his funeral expenses, and that after those ex-
penses were paid, that she should "have, enjoy, use, and
manage, to her own best advantage, for and during her natu-
ral life, all and singular his estate, moneys, and personal
property above mentioned."

The gift, by the codicil, to the wife, of an interest for life
in the moneys and stock, as well as in the proceeds of the
*Claverack* farm, does not affect or impair the devise over
in and by the will.   There is no incompatibility between
the bequests in the codicil and the devise over in the will ;
but the codicil pursues the intention of the will in confi-
ning the use of the *Claverack* estate to her life ; and it only
enlarges the *quantum* of interest which she was to enjoy
for life, by exchanging the annuity of 500 dollars, for life,
chargeable upon the public stock, for the use for life of all
his cash in hand, and of all his government stock.   It is still
but the use *for life,* and this is the express limitation, repeat-
ed again and again, in the codicil, and the intention is too
explicit to be mistaken.   The devise over by the will, of
the remainder of the testator's interest in the personal estate,

1821.<br>WESTCOTT<br>v.<br>CADY.

after the termination of the life estate or interest therein, is left undisturbed, and is not affected by any of the provisions in the codicil, and cannot be deemed to be revoked. The codicil is a revocation of the will, *pro tanto* only, and as far as the provisions in the one are inconsistent with those in the other. In every other respect, the original will remains in full force ; and if the remainder over to the brother and sister of the testator was valid, in the first instance, it was equally so after the publication of the codicil.

A limitation over of personal goods and chattels, or money, in remainder, after a bequest for life, is good.

The law is too well settled to be drawn into question at this late day, that a limitation of personal goods and chattels or money in remainder, after a bequest for life, is good.

In *Randall* v. *Russel*, (3 *Merivale*, 190.) The testator gave his farm, and stock, and crop thereon, to his wife during her natural life, if she should continue so long unmarried. The Master of the Rolls observed upon the case, that originally, by the *English* law, there could be no limitation even of a chattel, but a gift for life carried the absolute interest. Then a distinction was taken between the use and the property. The use might be given to one for life, and the property, afterwards, to another. A gift for life of a chattel was now construed to be a gift of the usufruct only. He referred to what Lord *Alvanley* had said, in *Porter* v. *Towney*, (3 *Vesey*. 311 ) that there had been great doubt what a person having a limited use of articles, (as corn, hay, &c. of which the use consists in the consumption,) must do. He conceived that a gift for life, if specific, of things *quæ ipso usu consumuntur*, was a gift of the property, and that there could not be a limitation over after a life interest in such articles. When the use and the property can have no separate existence, the old rule must prevail, and a limitation over after a life interest, is void.*

*See *ante* p. 21 *Gillespie* v. *Miller*.

The rule of equity and the exception to that rule are both clearly stated by Sir *William Grant*, in that case, as late as 1817 ; and it is very clear, that the rule applies to the present case, and that the present case does not fall within the exception.

Nor is this a very modern rule, for we find it settled upwards of a century ago.

In *Smith* v. *Clever,* (2 *Vern.* 59. 2 *Ch. Rep.* 187. S. C. under the title of *Smith* v. *Fisher,*) it was held, as early as 1688, that money might be limited and devised over by will after a bequest of it for life; and the same point, even in respect to money, was admitted, in *Pleydell* v. *Pleydell,* (1 *P. W.* 748.) In *Hyde* v. *Parratt,* (1 *P. W.* 1.—2 *Vern.* 331. S. C.) in 1695, it was held by Lord Ch. *Somers,* that a devise of goods to the wife for life, and, afterwards, to the testator's son, was a good devise over, and as valid as if the devise has been only of the use of the goods to the wife for life. The case received great discussion, and the Chancellor was said to have followed some recent precedents which had adopted the civil and canon law, in construing the use of the thing, and not the thing itself, to pass where the first devise was for a limited time, in order the better to comply with the intention of the testator. The bill was filed, in that case, by the person in remainder against the wife and the executor, for an inventory, and that the widow should give security to have the goods forthcoming at her death. Afterwards, in *Tissen* v. *Tissen,* in 1718, (1 *P. W.* 500.) Lord *Parker* observed, that the rule then was established, that a bequest of a chattel interest for life, passed only the use and property, and not the thing itself. So, again, in *Upwell* v. *Halsey,* (1 *P. W.* 651.) there was a devise of such part of the testator's *personal estate as his wife should leave of her subsistence,* to his son; and the devise over was held good. The Master of the Rolls said, it was established that a *personal thing* or *money,* might be devised to one for life, with remainder over. In that case, the second husband was decreed to account for what had come to his hands, after allowing what had been applied to his wife's subsistence.

The old rule itself was strongly insisted on by the Attorney General, in *Clarges* v. *Albemarle,* (2 *Vern.* 245.) in

1821.

WESTCOTT
v.
CADY.

1691 ; and yet in that case, as well as in *Hyde* v. *Parratt*, the distinction between a devise of the personal chattel itself to one for life, remainder to another, and the devise of the use thereof to one for life, with remainder over, was exploded ; and it was held that it amounted to the same thing whether the devise was the one way or the other ; for the testator's intention appeared to be the same in both cases, and ought equally in both cases to prevail.

If the codicil stood alone, unconnected with the preceding will, then, indeed, the rule insisted on by the counsel for the defendants, that a devise of dividends or interest or produce of stock, &c., *without limitation*, carried the principal or whole interest, might have applied. But as the codicil and will are to be taken and construed together as one connected will, the will has no application.

*Where a testator devised all the rest and residue of his estate, &c., to his brother and sister, and to them, and their heirs for ever. All the children of his said brother and sister to have an equal share of every thing he left; and if his brother died without children, the children of his sister should enjoy the whole equally ; Held, that the brother and sister of the testator took as tenants in common, not as joint-tenants.*

It may be made a question, whether the remainder over to the brother and sister of the testator, was to them in joint-tenancy or in common. If the will had stopped with the bequest of the rest and residue of his estate, real and personal, to his brother and sister, " to them and to their heirs forever," it would have been a joint-tenancy. In *Campbell* v. *Campbell*, (4 *Bro*. 15.) the Master of Rolls accurately reviewed the cases, and arrived at the conclusion, that where a legacy was given to two or more persons, without any other words to lay hold of to change the construction, they were joint-tenants. But almost any expression, or words denoting a different intention, will alter the construction. In this case, the testator added, that all the children of his brother and sister were to have " an equal share" of every thing he left, and that if his brother died without children, the children of his sister " should enjoy *the whole* between them, equally." Those subsequent words explain the testator's intention to be, that the brother and sister should take equally, as tenants in common, for otherwise, their children could not have " an equal share ;" and when it is said, that if his brother died without children, the chil-

dren of his sister should enjoy the *whole*, it seems to have alluded to the part which they otherwise would not have enjoyed, and to be founded on the idea of a severance of interest between the brother and sister, in the first instance.

If they took as tenants in common, then the plaintiffs, *S.* and *M.* are entitled to a moiety of the devise over, as heirs to their mother, *Sarah Wood*, deceased, and to the other moiety, as administrators of *Charles Chinn*, deceased, or as heirs and next of kin to him. In either capacity, they are entitled to his moiety of the estate. So, if the devise over to the brother and sister was a joint tenancy, then upon the death of *Sarah Wood*, the whole interest survived to *Charles Chinn*, and on his death, descended to the same plaintiffs. Therefore, *quacunque via data*, the right of the plaintiffs to sue for, and demand the whole of the personal estate of *Edward Chinn*, so accruing on the termination of his wife's life interest therein, is clearly established.

The original bill seems to have been well founded. The plaintiffs were entitled to call for the exhibition of an inventory. Formerly the *cestui que trust*, or legatee entitled in remainder after an estate for life, was allowed to call upon the legatee for life, not only for an inventory, but for security that the goods should be forthcoming at his decease. (*Vachel* v. *Vachel*, 1 *Ch. Cas.* 129. and *Hyde* v. *Parratt*, *supra. Slanning* v. *Style*, 3 *P. Wms.* 334.) But the rule of practice has since been altered, on that point; and in *Foley* v. *Burnet*, (1 *Bro.* 279.) Lord *Thurlow* observed, that the Courts do not now require the tenant for life to give security, but only to exhibit an inventory to be filed.

*A legatee in remainder, after an estate for life, may call on the legatee for life, for an inventory of the property devised, to be filed.*

I rather incline to think, that the plaintiffs were entitled to call upon *M. C.*, the executrix of *Edward Chinn*, deceased, for something more than the inventory; for her life interest does not seem to have extended to *all* the personal estate. It was the "estate, moneys, and personal property above mentioned;" and no part of the personal property had been

1821.
WESTCOTT
v.
CADY.

previously mentioned in the codicil, but the proceeds of the *Claverack* farm, and the money in hand, and the public stock and securities. The bank and turnpike stock owned by the testator, were not included in that description ; and the better opinion is, that they passed, at once, upon his death, by the residuary bequest.

I shall, accordingly, declare, that the plaintiffs are entitled to an account of the personal estate of the testator *Edward Chinn*, and which came to the hands and possession of his widow, *Margaret Chinn*, and from her has come to the hands and possession of the defendants ; and that they are entitled, out of the assets of *M. C.*, in their hands, to payment of the capital or principal, without interest, of the moneys and stock devised by *E. C.* to the said *M. C.*, his widow, for her life, being the proceeds of the sale of the *Claverack* farm, and being the moneys which the said *E. C.* had in possession at his death, and being the amount of the funds, or public stock owned by *E. C.* at his death, or if the stock has not been sold, then to an assignment of the same ; and that they likewise account and pay over to the plaintiffs the value, if sold, and if not, to assign over the turnpike and bank stock, admitted by the said *M. C.* to have been part of the assets of her testator, and to account for the dividends and capital received, with interest, &c. And I shall direct a reference to a master, to take the account accordingly, and to make all just allowances to the defendants or executors of *M. C.*, who was executrix of *E. C.*, and to take such examinations and proofs, as are usual in such cases, and to report, &c. and the question of costs, and all further questions are reserved, &c.

Decree accordingly.