Ranney, J.
This case requires a construction of the will and two codicils thereto of James Collier, late of Greene county, deceased. The complainant is his widow, and the defendants his executors and legatees. -
The will was executed on the 15th day of February, a. d. 1845 and with the exception of a house and lot in Bellefontaine, which was devised absolutely to the complainant, it directed the executors to sell and convert into money all his real and personal property; 370] the one-third of which, after ^paying his debts, etc., ho gave to the complainant “ in her own right, to her and her heirs forever, and to sell and dispose of, or use for her own benefit, in lieu of dower and all other claims on my estate.” The remaining two-thirds he divided equally between his brother, Moses Collier, and the children of his sister, Agnes Park, then deceased. Among the property then owned, or subsequently acquired by him, were several town lots situated in the town of Xenia, and about four thousand dollars of stock in the branch bank of that place, and in the Columbus and Xenia Railroad Company. On the 1st day of April, 1851, he executed the first codicil, in which, after reciting that he had by his will directed all his real property to be sold, he says: “It is now my desire, and my said executors are directed, to except from said sale the property wherein I now reside, which I wish reserved for the use and benefit of my beloved wife, Rachel Collier, during her natural life; and my said executors are herebj^ directed to sell, of the property lying west of Detroit street, in Xenia, so much of the' ground only as lies west of a line drawn from the alley between Galloway and Crumbaugh’s lots north to Market street, so as to leave all east of said line to be sold at the decease of my said wife.”
In relation to the bank and railroad stocks, this codicil provides: “It is also my desire, and my said executors are hereby accordingly directed, to reserve from sale my bank and railroad stock, and pay out the dividends which may come to their hands for distribution, to my heirs, so soon as thoy may receive such dividends.”
On the fifth of the same month, and shortly before his death, he executed the second codicil, in which he gives and bequeaths to his *371, 372 wife, during her natural life, a piece of ground near the town, then used as a pasture-lot. The testator died without children, leaving the complainant, his widow, and his brother Moses, and the children of his sister Agnes, his only heirs at law. The appraisers of the personal property belonging to his estate-set off to the widow, under the statute, property to the value of $524, for her year’s ^support, and within the time allowed by law, she duly elected [371 to take under the will.
The house that the testator occupied at the time the first codicil was made is situated on lot No. 59, which lies on the westerly limit of the land reserved from sale. He also owned a part of lot 60, which lies between lot 59 and Detroit street. We have no difficulty in holding the complainant entitled to the use of both these lots during her life. There is nothing in the will to indicate an intention to confine her to the lot on which the house stood. She is to have the property whereon the testator then resided; and he clearly indicated wbat he regarded as such by withholding from sale all east of the designated line until her death. It is equally clear that when that event happened, he expected'this part of the property' would then be sold, in accordance with the directions given in his will. He intended to postpone the sale until that time, but not to revoke the previous authority given his executors when that event should happen. His language is too explicit to admit of doubt. The reservation is to operate “ so as to leave all east of said line to be sold at the decease of my said wife.”
The questions presented by the parties are:
1. To whom will the proceeds arising from the sale of these lands, at the death of the wife, belong?
2. Who is entitled to the bank and railroad stocks? And,
3. Is the widow entitled to retain, without account, the property set off for her year’s support ?
The intention of the testator, derived from a careful consideration of what he has committed to writing in the will and codicil, must answer the two first questions, and our statute law the last.
I. On the part of the complainant, it is claimed that she has a present vested interest in one-third of the proceeds of these .lands, which she may dispose of by sale or -last will and testament; and if not.so disposed of, that it would, upon her death, go to her heirs; that she is entitled to the whole *of the stocks as the [372 “ heir ” of her husband, who left no children; and that she has not *373 relinquished her right to a year’s support by electing to take under the will.
■ These claims are all resisted by the defendants, who, on their part, insist that the provisions of the codicil are entirely inconsistent with the bequest of one-third of the proceeds of these lands to the widow by the will, and must be held to have revoked it; and, as a consequence, that the lands or their proceeds, at her death, descend or are distributed to Moses and the children of Agnes, as the lawful and only heirs of the testator; that, because they are such heirs, they are the persons designated in the codicil as entitled to all the stocks; and that the complainant, by electing to take under the will, relinquished all claims upon the estate not provided for in it, and consequently all claim for a year’s support
In endeavoring to elicit the intention of the testator, the will and codicils must be read- and considered together. Negley v. Gard, 20 Ohio, 315. Chancellor Kent, in Westcott v. Cady, 5 Johns. Ch. 343, lays it down “ asaclearand settled rule, that awill and codicil are to be taken and construed together, in connection with each other, as parts of one and the same instrument; ” and that “ the intent of the testator is to be gathered from the whole, and a codicil is no revocation of a will, further than it is expressed.” This results from the very nature and office of a codicil, which is made to be added to the will, to enlarge, restrict, or modify some of its provisions, and not, like a later will, to stand in -the place of, or supersede it.
The will, in this case, is clear and explicit. It gives the executors full power to sell and convert into money, all his real and personal property, except such of the personal property as the widow chooses to take at the appraisement. It then bequeathes to her absolutely one-third of the proceeds “in her own right, to her and her heirs forever.”
Now, if the substance of these codicils had been added to the will at the time it was made (and they must be construed as 373] though they had been), they could have been *held to restrict its provisions no further than to postpone the sale of some portion of the real estate until the death of the widow, and in the meantime to secure the enjoyment of it to her. There is not one word used that indicates an intention to deprive her of one-third of the property, so explicitly conferred by the will. Nor can we see any reason, consistently with the testator’s declared intention, *374 that there should have been. His "wife was then over seventy-years of age. The property had all been acquired during their intermarriage, and she may be fairly supposed to have contributed to its acquisition in the full proportion secured to her by the will of the husband. A just sense of what was due to her seems to have controlled him when he put one-third of it subject to her absolute disposal, naturally supposing that what was not wanted for her comfort during the short remnant of her days, would, by her appointment, or the regular course of descent, find its way into her family. He lived six years longer, and the great age of his wife, at that time, undoubtedly suggested to him the propriety of permitting hey to occupy the homestead for the balance of her life; but we can not suppose that this slight boon, accorded by an affectionate husband to the very aged partner of his youth, was intended to annul the just division that he had previously settled upon between her and his kindred, and. her blood and his blood.
It is a settled rule of construction, that a testator is never presumed to intend to die intestate as to any part of his estate to which his attention seems to have been directed; and a court of equity will put such a construction upon equivocal words as to prevent such a result. Maberly v. Strode, 3 Ves. 450; Booth v. Booth, 4 Ves. 403. It is certain that but two-thirds of the proceeds of these lands is given by the will to the brother and children of the sister of the testator. If they can reach the remaining third, it can only be done upon the assumption that he died intestate as to that] and as his heirs. To say nothing of the great improbability that he would, with his mind directly upon the subject, +have failed [374 to designate who should take so large a portion of his estate, if he intended to change the disposition of his will, it is by no means clear that the establishment of such intestacy would not give the same interest to the widow as she now claims under the will. In Ferguson v. Stuart’s Ex’rs, 14 Ohio, 140, it was held that land, directed by will to be sold and converted into money, is treated as personal estate, and governed by the statutes of distribution as such; and by the 180th section of the administration law (Swan’s Stat. 389), the widow is entitled to the whole of the personal estate where the intestate has left no legitimate child. But it is unnecessary to decide what might have been her rights in such case, as we are clear in the opinion that the will disposes, of the *375 whole, and that there is nothing in the codicil to annul any of its dispositions.
II. The next question presented arises on the bank and railroad stocks. There can be no doubt that the devise of the dividends of these stocks, without limitation as to time or other qualification, carried the stocks themselves. 7 Cranch, 173; 3 Wheat. 563; 4 Kent Com. 54, and cases cited. The question is :_To whom? Being a part of the personal estate, they were, by the will, directed to be sold and divided into three parts with the proceeds of the other property. In the first codicil, the testator says it is now his desire that his executors should reserve them from sale, and pay over the dividends, as they accrue, to his “ heirs.” The widow says she is such heir, quoad the personalty, and therefore they belong to her.
The other legatees insist that she does not answer the description ; that the testator has used the word in the plural, and when.ever he spoke of the complainant, he has designated her as his M wife; ” and that they alone, as the persons to whom the real ■estate would descend, can be supposed to have been in the mind of 4he testator. We can not adopt either conclusion, because we do ¡not think either correctly interprets the intention of the testator. ,375] ^Recurring again to the jDrinciple that this codicil is to be iread as a part of the will, it is certain that no revocation of the ’bequest there made to either of the parties is expressed. If the ■reservation of these stocks from sale had been made in the will, in
■ connection with an equal distribution of all his property, no one ■can doubt that he intended by the word “heirs,” those to whom he had given the property, and that he had used it as equivalent do legatees ;'and this, wo think, is precisely what he did mean. 'The codicil bears evident marks of being drawn by an unpracticed ¡hand, and it is nothing remai’kablo that a careful discrimination ■was not made between a class of persons who would take by de-scent or distribution, and those designated to take by will. Nor •was the word an entire departure from the strict legal idea intended to be conveyed. They were all in some sense his heirs— ■the widow as to the pei’sonalty, and the other legatees as to his ¡real property, had he died intestate. The question is not, what ■ does the word in strict propriety mean, but what did the testator ■mean by it? As was well said by the court in King v. King, 15 tOhio, 561, where the word was held to mean children, “ a testator *376 may use such words as he may please to convey his intention; and such intention, if clearly manifested, will be carried into effect, if it be not Unlawful, and does not create an estate forbidden by law.” We are satisfied it was no part of the testator’s object to interfere with the bequests he had made in his will, but being now satisfied that it would be for the interest of all concerned to suffer the investment to remain in these stocks, he simply directed his executors to take that course and pay over the dividends as they accrued.
III. We also think the widow entitled to her allowance fora year’s support, notwithstanding her election to take under the will. By the 45th section of the administration law, the appraisers are required to set off, and allow to the widow and children under the age of fifteen years, sufficient provisions, or other property, to support them for twelve months from the death of the decedent; which are not to be included *in the inventory, but returned [376 with it in a separate schedule, signed by the appraisers. This is to be done in every case, whether there is a will or not; and the property so set off is withdrawn from the estate, and constitutes no part of the fund to be administered by its representative. This return is to be made within three months, while the widow has six months within which to determine whether she will take under the will or not. The allowance is designed for the support of herself and children during the year that the executor may retain all the assets of the estate, awaiting the presentation of debts against it, and while she has no power to compel him to pay over any legacy to her, however ample it may be. If there are children they too have an interest in-the provision, that ought not to be taken away by reason of any benefit secured to the widow alone by the will.
Let it be granted that the husband intended to deprive the widow of this allowance, if she took under his will; still, as the law gave it to her, has the law anywhere given the husband power to take it from her, or to make it a condition upon which she may claim the property given to her by his will? We think not. All the legislation to which we have been referred, relates exclusively to her rights of dower, and the distributive share to which she would be entitled in her husband’s estate. The 45th and 46th sections of the act relating to wills, passed March 23, 1840 (Swan’s Stat. 998), governs this case. The 45th section puts the widow to her election, whether she will take the provision made in the husband’s *377 will, “ or be endowed by his lands;” and the 46th declares that if she “fail to make such election, she shall retain her dower, and such share of the personal estate of her husband, as she would be entitled to by law, in case her husband had died intestate;” but “if she elect to take under the will, she shall be barred of her dower, and take under the will alone.” Neither in this nor any of the amendatory acts, is any reference made to this temporary allowance. In performing their duty, the appraisers have no right 377] to know ^whether there is a will or not; and if they do. know there is one, they can not know whether the widow will claim the benefit of its provisions. They must still perform the duty of setting off property enough for the year’s support, which effectually separates it from the estate, in accordance with the absolute disposition which the law makes of it, irrespective of the claims of creditors or legatees, and without regard to what may have been the wishes or directions of the decedent upon the subject.
A decree may be taken, placing a construction upon the will in accordance with these views, and remanding the cause to the district court for final disposition.