## EASTMAN *v.* BATCHELDER AND WIFE *& als.*

Where a father made a conveyance of a farm to his son, and, at the same time, took a mortgage to himself and wife, with a condition, by which the son and his heirs, executors and administrators were to provide for the maintenance of his parents during their lives — *held*, that the duty to make such provision was personal, and could not be transferred to third persons, nor the property be taken by the creditors of the son without the consent of the parents:

That, in case of the death of the son, the condition of the mortgage must be kept by his heirs, executors, or administrators; that it could not be by his creditors, nor the property be taken during the lives of the parents, to pay his debts:

That the son might make a valid mortgage of the premises to creditors, but that such mortgage would not give the mortgagees power to perform the condition of the former mortgage, or to take possession of the premises during the lives of the parents.

That after the decease of the son and of the parents, the property would belong to the estate of the son, if the mortgage had not been foreclosed by the parents.

New matter may be introduced into a bill of revivor and supplement, so that defects in the original bill, arising from subsequent events, may be supplied, provided the original bill shows a case for the complainant; otherwise not.

IN EQUITY. The bill was filed February 15, 1851, by Royal Eastman, of Somersworth, against James Batchelder, and Polly, his wife, and Nathaniel Tasker, of Northwood.

The original bill, together with the answers of the original defendants, and the evidence, present this case:

On the 29th day of March, 1837, the defendant, James Batchelder, conveyed to John B. Tasker — who had married his daughter, Martha P. Batchelder, in January previous — for a consideration stated at $2500, his homestead farm, in Northwood, and two pieces of out land, called the " Oak hill lot" and the " Mountain lot." At the time this deed was given, Tasker paid to Batchelder $700, and gave him his note for $550 more; most of which has been paid. The whole property conveyed was estimated at this time at $2500, the consideration stated.

On the same day, Tasker, in further part consideration of the deed to him, gave a life lease to Batchelder, of all the premises conveyed to him, except one undivided half of the homestead and buildings. And also, at the same time, made another con-

veyance to Batchelder and his wife, in further consideration of the deed to him, of all the lands conveyed, with this condition : " That if the said John B. Tasker, his heirs, executors and administrators, shall, at all times hereafter, well and comfortably maintain, support and provide for the said James Batchelder, and Polly, his wife, so long as they, or either of them, shall live, and shall furnish them at all times during said term, at the house by them now occupied, in said Northwood, or, should that be providentially destroyed, in some other comfortable and respectable dwelling-house, on the farm by them now occupied, with such meats, drinks, clothing, fuel, lights, medicines, medical aid, nursing, help and attendance, as may be necessary and comfortable for them, and the survivor of them, so that while they, or either of them live, they may enjoy, so far as respects the necessaries and conveniences of life, in health and sickness, the comforts to which they have been accustomed, and which become their age and station in society ; and if he shall also, by himself, his family and his servants, at all times treat the said James and Polly with kindness and respect, and, at their death, shall give them a decent burial, with christian rites, then this deed is to be void."

This conveyance or mortgage, and the life-lease, were recorded in November, 1837, and the deed from Batchelder to Tasker was recorded on the 6th day of September, 1841. There is no suggestion or evidence of any fraud between Batchelder and Tasker, in the making of this contract, or in any of the conveyances that passed between them.

From the time of the execution of these instruments, the deed, lease and mortgage, up to June, 1845, the families resided together on the farm, and Tasker fulfilled the condition of the mortgage. During that time he also improved the condition of the farm and repaired the buildings ; expending from two to six hundred dollars thereon. Batchelder also contributed something towards the repairs.

In June, 1845, Tasker went to Great Falls, in Somersworth, and entered into trade there — his family, however, remaining at Northwood, on the farm. He continued at Great Falls till May,

1849, when he died, leaving his widow and one child. In the summer of 1848 he failed in business.

As to Tasker's going to Great Falls, the evidence is contradictory whether it was done with the acquiescence of Batchelder and wife, or not, though the inference which we draw from it is, that Batchelder yielded an unwilling consent to his going.

During his absence the farm was carried on under Tasker's directions, and chiefly at his expense, but not to the entire satisfaction of Batchelder. Batchelder, however, so far as these original papers show, took no legal steps to foreclose his mortgage.

On the 6th day of September, 1841, John B. Tasker mortgaged the homestead to Luther Tasker, to secure a note of that date for the sum of $557. This mortgage was afterwards sold and assigned to the defendant, Nathaniel Tasker, and, with the exception of a payment of $43, is now due, with the interest thereon.

On the 3d day of February, 1847, John B. Tasker mortgaged the whole premises to the said Nathaniel Tasker, to secure a note of that date for $1800, and that is now due, with the interest thereon, excepting a payment of about $300, made in 1849.

In addition to these two debts, John B. Tasker, at the time of his death, was owing about $1900. Martha P. Tasker, his widow, was appointed his administratrix, and the inventory of his estate consisted only of this farm in Northwood, and was appraised at $1970.

On the 14th day of August, 1850, the administratrix obtained, from the judge of probate, license to sell at auction all the right in equity which her husband had at the time of his decease of redeeming the premises, to pay and discharge the debts and demands existing against the estate, with incidental charges; and on the 28th day of October, 1850, sold and conveyed the same to the complainant.

On the 4th of January, 1851, the complainant demanded in writing of Batchelder and his wife, who were in the occupation of the premises, an account of all their demands and claims, by virtue of the mortgage to them, and requested permission to enter

upon the premises, and perform the condition of the mortgage from Tasker to them, but they did not comply with the demand, and refused to permit him to take possession of the premises, or perform the condition of the mortgage.

On the same day the complainant also made a demand on Nathaniel Tasker, of an account of all sums due on his mortgages, but none has been furnished.

In the spring of 1850 the said Nathaniel Tasker, as the holder of the mortgages from John B. Tasker to Luther Tasker and himself, offered and tendered performance of the condition of the mortgage from John B. to Batchelder and wife, but they refused to permit him to enter upon the premises, or to perform the condition of the mortgage.

After the death of Tasker, in 1849, Batchelder managed and carried on the farm by his servants or tenants, according to his own will and pleasure. It does not appear that the profits of Tasker's half would equal the amount necessary for the support of Batchelder and wife.

The bill prays for an account of all the demands secured by the mortgage of Tasker to Batchelder and wife, and of all damages and costs, if any, incurred by reason of the non-performance of the condition thereof, and of all rents and profits by them received from the premises; and also that Batchelder and wife be decreed to surrender the premises to the complainant, or such control or possession thereof as might enable him to perform the condition of the mortgage. It also prays for an account of the amount due on the mortgages held by Nathaniel Tasker.

Since the filing of the original bill and answers, and the taking of testimony, Batchelder and wife have deceased; and in November, 1853, a bill in the nature of a bill of revivor was filed by the complainant against Ransom Batchelder, a son of James Batchelder; Martha P. Tasker, the widow of John B., and Frances Lane, a daughter of James Batchelder, and Isaiah Lane, her husband. This bill sets forth the parties to the original bill, and what its prayer and object was, and the several proceedings thereon, and the abatement. It then states that James Batchel-

der, in 1847, made his will, and appointed Ransom Batchelder sole executor thereof, who caused the will to be proved in June, 1853 : That Ransom and Martha P., or one of them, have entered into and now hold possession of the premises, claiming an interest therein under the will or otherwise, and taking the rents and profits thereof, and that the parties against whom this bill is brought are the only heirs-at-law of James Batchelder.

By the will of James Batchelder the use of the household furniture is given to his wife, stating that he had made provision for her comfortable support and maintenance. One half of his live stock and farming utensils is given to his son-in-law Tasker, and the other half to his son Ransom. What is left of the household furniture, after his wife's death, he gives to his daughter, Mrs. Tasker, and five dollars to his daughter, Mrs. Lane. He then makes Ransom and Mrs. Tasker legatees of the residuum, and appoints Ransom executor.

This bill was taken as confessed, but the defendant, Ransom Batchelder, has filed an amendment to the original answer of James Batchelder, setting forth a foreclosure, by James Batchelder, of the mortgage to him and his wife, by possession taken February 22, 1850, and retained till May, 1853.

*Eastman, pro se.*

The conveyance by John B. Tasker to James and Polly Batchelder was a mortgage, both in equity and by the statute of New-Hampshire. The parties agreed that a mortgage should be given. The instrument has every form and characteristic of a mortgage, and the parties always called and treated it as such.

The performance of the condition was not a personal trust and obligation. The parties did not so intend or consider it at the time.

This case is not like *Flanders* v. *Lamphear*, 9 N. H. 201. In that case the obligation to support was the substantial consideration of the conveyance of the father to the son, and the conveyance might, therefore, with some show of propriety, be con-

sidered a trust; but in this case one half of the farm was paid for by Tasker, and a life-lease of the other half, and all the out lands given back; so that all the consideration Tasker received for the obligation to support Batchelder and his wife during their lives, was the *remainder* in the one half of the farm and the out lands; a consideration greatly inadequate for such an obligation, and negativing the idea of a trust. If the principle of *Flanders* v. *Lamphear* is held to be law, (unsustained as it is by a single authority in this country or in England,) we think it should be at least confined to cases where the obligation to support is substantially the consideration received for the mortgaged premises, and not to cases like the present, where a large money consideration is paid, in addition to the agreement to support.

But allowing in this case the performance of the condition to be *personal*, still the complainant has rights which a court of equity can and should protect.

1. He might have procured the performance of the condition by the "administratrix" or heir, and the court would have decreed accordingly. 2. The complainant, if he had not a right to the possession of the premises, and to perform personally the condition of the mortgage, had a right to pay what damages had accrued by reason of the non-performance, and thus save a foreclosure. He had the title in the land, subject to the performance of the condition, or payment of all damages and costs which might accrue at any time before foreclosure. It is the obligation to support which in *Flanders* v. *Lamphear* is said to be personal, not the mortgage. If there had been a breach of condition by Tasker in his life time, and Batchelder and wife had entered to foreclose, and Tasker had requested an account of the damages, &c., which had been refused, and he had brought a bill to redeem, the court would have ordered an account taken by a master, and decreed that, upon payment of what damages and costs might thus be found due, the foreclosure should be stayed, and the mortgagor might, from time to time, as the court decreed, have paid the damages within a year from the time they accrued,

and thus save his estate. 2 Hilliard on Mortgages 109 ; *Adams* v. *Brown*, 7 Cushing 220 ; *Stewart* v. *Clark*, 11 Met. 384 ; *Dewing* v. *Comings*, 11 N. H. 474.

The complainant stands as well in this case as the mortgagor himself would have stood. He can just as well pay all damages and costs, which the court, upon account taken, may find due, as the mortgagor himself, or his heirs, executors, or administrators could.

It is well settled that damages may be decreed for non-performance of personal services secured by mortgage. 1 Hilliard Mortg. 84; *Austin* v. *Austin*, 9 Vt. 420 ; 27 Maine 242 ; 11 Met. 384 ; 20 Pick. 499.

This being so, there is in fact no difference whether the obligation to support, &c., is personal or not. Damages can as well be paid by the complainant as by Tasker's administratrix. This saves the equitable and legal rights of all parties. If the complainant may not save his interest in the land by paying what (if any thing) may be found due on an account taken, Nathaniel Tasker, who is also deeply interested, can be in no better situation. If the complainant had not, at the time of the commencement of this suit, a right to such a decree of this court as (if complied with) would save his rights in the premises, and stay foreclosure, then this court must hold that a breach of condition (when possession is taken) amounts to a *forfeiture*, because if the proceedings for foreclosure have been legal and regular, both Nathaniel Tasker and the complainant must have stood still and seen the mortgage foreclosed, and all their rights extinguished, without being in any way able to stay proceedings, notwithstanding the value of the farm was more than ten times sufficient to support the mortgagees.

*Marston*, for the defendants.

I. Ransom Batchelder and Martha P. Tasker stand as the representatives of James and Polly Batchelder, the original defendants, and the case must be decided upon the facts as they existed at the time the original bill was brought.

II. The deed from John B. Tasker to James Batchelder, of March 29, 1837, creates a personal trust or contract in Tasker, which could be performed by John B. Tasker, his heirs or executors, and by no one else. *Flanders* v. *Lamphear*, 9 N. H. 201; *Clinton* v. *Fly*, 1 Fairfield 292.

III. Such a contract is not assignable. Chitty on Con. 739; *Flanders* v. *Lamphear*, and *Clinton* v. *Fly*.

IV. It is not strictly a mortgage. It was a family arrangement. The agreement was made by the parties for their own personal convenience; the court is bound to execute the agreement of the parties when they do not contravene law.

This may as well be done by an agreement or conveyance, having some of the forms of a mortgage, as by any other mode of agreement. *Bonham* v. *Newcomb*, 1 Vernon 214; 2 Ventris 365.

V. The statute makes every contract conditioned to pay money or do some other thing, a mortgage within the meaning of the act. That is, that the mortgage might be a right to redeem.

In other respects the contract or conveyance is not affected by the statute. It does not make a contract assignable which is not assignable at common law. It does nothing more than extend the time in which the mortgagor may perform the condition, but does not give the right to persons not named in the contract or conveyance.

EASTMAN, J. Upon the facts presented in this case, and assuming that the condition of the mortgage from Tasker to Batchelder and wife was kept during the life-time of Tasker, there lies at the foundation of this proceeding this question: has the complainant any such title or right as will enable him to maintain his original bill?

In *Flanders & Wife* v. *Lamphear*, 9 N. H. 201, which was an action growing out of a contract similar to that made by Tasker in the present case, the court held that the duty was personal to the mortgagor, and that he could not transfer it to third persons and substitute them in his stead, without the consent of

the mortgagees. In that case the plaintiffs gave a deed of the premises to their son, Daniel Flanders, Jr., and he gave back a mortgage, conditioned for the support, by himself, his heirs, executors and administrators, of the plaintiffs during their natural lives, and to pay sundry debts against his father. Subsequent to this the son conveyed the premises to a third person, and they were again conveyed, so that Lamphear, the defendant, held them by several *mesne* conveyances from the son, Flanders, Jr. The plaintiffs then brought a writ of entry against Lamphear, and it was decided that it could be maintained, unless it could be shown that the conveyance by the son was made with the consent of the plaintiffs. In remarking upon the terms of the condition of the mortgage, *Parker*, C. J., says: " The language seems to be selected with a particular view of securing the performance by the son, so long as he might fulfill it, and after that time by his heirs or personal representatives."

In *Clinton* v. *Fly*, 1 Fairfield 292, (which was a writ of entry, brought against the defendant as the assignee of one Roundy,) a contract in writing had been made between the town of Clinton and Roundy, by which it was agreed that Roundy should suitably maintain his father and mother, and an idiotic brother, during their natural lives ; for which the town agreed to give him the use and occupancy of a certain farm, during the lives of the father and mother, and at their decease to give him a deed, conveying all the right, title and interest of the town in the same ; and it was held that the contract was not assignable, it not having been made with Roundy and his assigns; and that it was a personal trust ; and the action was sustained, and the town recovered the land of Roundy's grantee. In the course of the opinion the court remarked, that, if the contract should be held assignable, the persons to be supported would be liable to be transferred at the convenience and pleasure of successive assignees, whether they possessed or not the temper and qualities which would enable them satisfactorily to fulfill the trust.

In the present case, a part of the consideration of the deed of the farm to Tasker was the support of Batchelder and his wife

during their several lives, by their son-in-law; the object no doubt being to have their daughter and her husband reside with and take care of them in their old age. It was a personal undertaking by Tasker, and to secure the performance of it the mortgage was given. So far as the liabilities and rights of Tasker are to be considered, the case cannot be distinguished in principle from that of *Flanders and Wife* v. *Lamphear*. During his life Tasker could not have sold the premises and transferred the responsibility of supporting Batchelder and his wife upon third persons, without their consent, and had he done it they could have maintained a writ of entry for the premises.

Batchelder gave a deed of all of his real estate to Tasker, upon the consideration, among others, that he and his wife should be supported on the premises during their lives, by Tasker, his heirs, executors and administrators. This was a contract which the parties were perfectly competent to make; which was for good consideration on both sides; concerning which no fraud is proved or suggested, and which a court of equity cannot set aside. A court of equity, says Chancellor *Kent*, cannot control the lawful contracts of parties. 4 Kent's Com. 131.

For good reasons Batchelder chose to have the contract a personal one, and not to have it extend to the assigns of Tasker. Tasker could not, therefore, transfer the premises and his responsibilities, nor could his creditors, before his decease, have deprived him of the possession of the land, and retained it. Had they taken possession, the condition of the mortgage would have been broken, and Batchelder could have brought his writ of entry and recovered the land.

The mortgage of Tasker to Batchelder was put upon record, and was open to the inspection of all. Independent of that mortgage, Tasker was the owner of the premises, and could convey them by mortgage or otherwise; and the conveyances would be good, provided they should not be defeated by a failure to perform the condition in the mortgage to Batchelder. Tasker's grantees, however, would take subject to that mortgage, and that would be a matter for them to consider in taking their con-

Eastman *v*. Batchelder and Wife.

veyances.   But as the mortgage would be brought to their notice by the record, no fraud could be charged upon Batchelder, and they would have to hold, subject to his claim.   They could not take possession of the premises and redeem the mortgage, because the contract was personal with Tasker and did not embrace them.

We call this instrument a mortgage, because every conveyance of lands, made for the purpose of securing the payment of money, or the performance of any other thing in the condition thereof stated, is declared by our statute to be a mortgage.   Rev. Stat., chap. 131, sec. 1.   But it is not a mortgage that can be satisfied by the payment of money.   That is not its condition. There is no provision by which money is to be paid.   The condition requires personal services, and those to be performed by John B. Tasker, his heirs, executors and administrators. That is the contract which the parties have fairly and legally entered into, and of which they have given public notice, by placing the same upon the records of the county, and no one has a right to put Batchelder and his wife in a different situation.   Suppose John B. Tasker, in his life time, had broken the condition, and then tendered a sum of money as damages, and brought his bill to prevent a foreclosure, would the court say that it could be done ?   If a tender of money could answer for one breach, then it might for others ; and if damages could be paid from time to time, then why might they not be for the entire time ? and thus the condition of the mortgage be wholly defeated and the character of the contract entirely changed.

Lord *Eldon* says there is a distinction between the breach of a covenant or condition to pay money, and one requiring acts to be done.   In the former case relief may be granted against a forfeiture, because the money and interest may be paid as a satisfaction.   But where any thing else is to be done but the payment of money, the law having ascertained the contract and the rights of the contracting parties, a court of equity could not interfere.   *Hill* v. *Barclay*, 19 Vesey 56.   And this doctrine is recognized and stated by Chancellor *Kent* as the rule that now prevails.   4 Kent's Com. 130.

It has been suggested that, notwithstanding the condition was personal, to be performed by Tasker, yet that the legal possession of the land might be in his grantees, and thus a bill be maintained. But this does not relieve the difficulty. The bill, by whomsoever filed, must call upon Batchelder for an account of the damages sustained, and for possession of the premises, so as to perform the condition; and here the same obstacle is encountered — the want of right to make this demand upon Batchelder. He has made no contract with any one but Tasker. He has conveyed the lands upon condition that he and his wife shall be supported by Tasker, and by him alone; and if that condition is not kept he has the right to the possession, and no one can deprive him of it. All persons except Tasker, his heirs, executors and administrators, are strangers to him, and no conveyance by Tasker can affect him.

And if Tasker could not make a conveyance during his life that would deprive Batchelder and wife of the possession, his administratrix could not after his decease. She could give no better title than he, nor make any conveyance that could transfer the right of support belonging to Batchelder and wife to another place, or to other persons, than those specified in the original contract.

The complainant, then, by his deed from the administratrix, acquired no title to the premises, which gave him a right to call upon Batchelder and wife for the purpose of redeeming the mortgage which they held, or of performing the condition upon which Tasker had received his deed. He had no right to the possession. After Tasker's death, that condition and contract were to be performed by "his heirs, executors or administrators;" not by his "assigns," or by those of his administratrix, nor by his creditors; but by the persons specified in the contract; and none but those could legally perform the contract, or hold the premises as against Batchelder and wife.

As to Nathaniel Tasker, the mortgagee of John B. Tasker, the orator has no ground of complaint. If he had rendered the account of the amount due upon his mortgages, the complainant

could not have obtained possession of the premises, for he had no title himself which gave him the right of possession at that time, even had those mortgages never existed.　The administratrix sold and conveyed to the complainant the equity of redemption.　That sale gave no right of possession or right to redeem during the life-time of Batchelder or wife.　After her husband's death, the equity, that is, the right to fulfill the condition of the mortgage to Batchelder and wife, was in her as administratrix of her husband, and in no one else, unless in her minor child; and her deed gave the complainant no power whatever to interfere with the premises, so long as Batchelder and wife should survive. Before one who holds the title of a mortgagor can effect the discharge of the mortgage, or remove prior incumbrances, he must show a good title in himself, and a legal right to redeem.　*Farr* v. *Dudley*, 1 Foster (21 N. H.) 372.　That case was a decision on proceedings under the statute; but the principle may be applied here.　The complainant had no title that authorized him, at that time, to call upon Nathaniel Tasker for an account; nor had he any occasion for such an account, for Tasker could not then foreclose his mortgages, nor obtain the possession, any more than the complainant.　Indeed, their rights would not seem to be very conflicting.

If these views are correct, it is evident that the prayer of the bill could not have been granted at the time it was filed; Batchelder and wife being then alive, and in the occupation of the premises, and the complainant standing in no position that could give him the right to take the possession or fulfill the terms of the contract.　The new parties, in the bill of revivor, are all legatees or devisees under the will of James Batchelder.　This bill has been taken as confessed, and all its material allegations are therefore admitted.　The confession admits the commencement of the former proceedings, and the abatement of the same by the death of Batchelder and wife, before they were completed.　It admits, further, that these defendants claim under the will, and that Ransom and Mrs. Tasker have possession of the land.　But the confession admits no rights to exist in the complainant beyond

what were in him prior to the death of Batchelder. And if, at the time of filing his original bill, and during the lives of Batchelder and wife, there was no foundation upon which the bill could rest, the new matter introduced into the new bill cannot give him a decree. New matter may be introduced into a bill of revivor and supplement, so that defects in the original bill, arising from subsequent events, may be supplied. *Westcott* v. *Cady*, 5 Johns. Ch. 334; *Pendleton* v. *Fay*, 3 Paige 204. But this cannot be done with any effect where there is nothing in the original bill by which it may be sustained. 3 Danl. Ch. Prac. 1722; *Bampton* v. *Burchell*, 5 Beaven 330. The original bill must show a case for the complainant, otherwise the new matter would be a new cause in court.

Entertaining this opinion in regard to the complainant's rights in the present proceedings, it becomes unnecessary to consider the alleged foreclosure, as set forth in the amendment to the original answer. Were that under consideration, the first inquiry would be, whether the foreclosure had been legally and in good faith perfected. If John B. Tasker, in his life-time, suffered a foreclosure in order to cut off his creditors; or if Mrs. Tasker, after his decease, permitted her father to take and hold possession for the purpose of effecting the foreclosure, and thus placing the title in him, that the property might go to her and her brother under the will, in either case the act would be fraudulent and the foreclosure probably fail.

Aside from the foreclosure, there would seem to be nothing to cut off the rights of Nathaniel Tasker, or of the other creditors. If the mortgage to Batchelder was not legally and in good faith foreclosed before the decease of Batchelder and wife, the property, upon their death, would belong to the estate of John B. Tasker, to be administered upon according to law, and the will of Batchelder could not operate upon it.

It would seem also that Martha P. Tasker, having given a deed of the equity, with covenants, would be estopped from disputing the validity of that deed. *Heard* v. *Hall*, 16 Pick. 457.

But we do not propose to consider these questions, or others

that might be suggested, or to give any opinion upon them at the present time. The position of this case does not require it. Should other and new proceedings be instituted, they can then be examined and decided.

As the complainant, at the time his bill was filed, had no cause of action to sustain the bill or give him a decree, and as the subsequent matters cannot cure that defect, the

*Bill must be dismissed.*